UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JOHN FLETCHER,

        Petitioner,

v.                                          CASE NO. 05-74659
                                         HONORABLE PAUL V. GADOLA

KENNETH T. McKEE,

        Respondent.
_____/

## **OPINION AND ORDER DENYING HABEAS CORPUS PETITION**

Petitioner Michael John Fletcher has filed a Petition for the Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The Habeas Petition challenges Petitioner's state convictions for second-degree murder, MICH. COMP. LAWS § 750.317, and possession of a firearm during the commission of a felony (felony firearm), MICH. COMP. LAWS § 750.227b. Petitioner alleges that the jurors considered extraneous evidence during their deliberations and that the evidence was insufficient to support the murder conviction. Respondent urges the Court to deny the petition. The Court has concluded from a review of the pleadings and the record available that the state court's adjudication of Petitioner's claims was objectively reasonable. Therefore, Petitioner is not entitled to habeas relief, and the habeas petition must be denied.

**I. Background**

Petitioner was charged in Oakland County, Michigan with first-degree murder, assaulting a pregnant individual and intentionally causing a miscarriage or still birth, and two counts of felony firearm. The charges arose from allegations that Petitioner shot and killed his pregnant wife. The facts leading to Petitioner's arrest have been summarized as follows:

> Defendant and the victim, Leann Fletcher, were married in 1993 and had a daughter in 1995. In 1997, defendant became involved in an extramarital affair with Susan Chrzanowski, a local district judge. Thereafter, defendant exhibited a pattern of vacillation between continuing his marriage and ending his marriage to pursue his relationship with Chrzanowski. Defendant separated from Leann twice after August 1998, but reconciled and returned to the marital home both times. During this time, Chrzanowski informed defendant she was unwilling to continue her involvement with him if he were sexually active with Leann. Defendant assured Chrzanowski that he was not sexually active with Leann and that divorce was inevitable.
>
> On the afternoon of August 16, 1999, defendant and Leann went to a shooting range. Defendant, who had owned a .45 caliber Smith & Wesson pistol for almost a year, had never before taken Leann to a shooting range. Defendant and Leann left the shooting range after Leann had fired the gun once. Shortly after returning home, defendant called 911 and reported that Leann had shot herself. Defendant informed the dispatcher that they had just returned from the shooting range and that the gun discharged while Leann attempted to reload it. Leann was dead before emergency medical services personnel and the police arrived.
>
> The police immediately obtained a warrant that, in pertinent part, authorized the police to search and seize "[e]vidence of a fatal shooting including but not limited to any and all weapons and ammunition, spent casings, blood and/or any objects which may be on the premises which appear to have blood stains upon them . . . ." While executing the search warrant, Police Sergeant Thomas Cleyman found a complaint for divorce in defendant's desk and seized it, concluding it constituted evidence of a motive to murder Leann. Sergeant Cleyman then discovered photographs and correspondence between Chrzanowski and defendant and greeting cards of a romantic nature, all of which were contained in a brown, expandable envelope found in the closet of an upstairs bedroom that defendant used as a home office. Sergeant Cleyman seized the envelope and its contents, concluding they were evidence of an extramarital relationship, which also constituted evidence of a motive to murder Leann. Thereafter, defendant was arrested for Leann's murder.

*People v. Fletcher*, 260 Mich. App. 531, 533-35; 679 N.W.2d 127, 131- 32 (2004).

The prosecutor's theory was that Petitioner killed his wife shortly after learning that she was pregnant because he did not want to jeopardize his relationship with Susan Chrzanowski, who testified that she would have ended her relationship with Petitioner if she had known Leann Fletcher was pregnant. Petitioner did not testify. His defense was that the prosecution did not prove beyond a reasonable doubt that he killed Leann.

2

The trial court dismissed the assault charge and one count of felony firearm during trial, and on June 30, 2000, the jury found Petitioner guilty of second-degree murder and the remaining felony firearm count. The trial court sentenced Petitioner to two years in prison for the felony firearm conviction and to a consecutive term of life imprisonment for the murder conviction.

Petitioner raised his two habeas claims and other issues in an appeal of right, but the Michigan Court of Appeals affirmed his convictions. *See id.* Petitioner then applied for leave to appeal in the Michigan Supreme Court. While his appeal was pending there, he filed a federal habeas corpus petition, alleging that he was being denied his right to a speedy appeal. On October 25, 2004, the Michigan Supreme Court denied leave to appeal. *See People v. Fletcher*, 471 Mich. 900; 688 N.W.2d 83 (2004) (table). Petitioner then moved to withdraw his habeas petition on the ground that it was moot. This Court granted his motion on November 29, 2004. *See Fletcher v. McKee*, No. 04-40239 (E.D. Mich. Nov. 29, 2004).

Petitioner filed the pending Habeas Petition, through counsel, on December 8, 2005. The two grounds for relief read:

> I. Petitioner's convictions should be reversed and a new trial granted where the jury impermissibly conducted an experiment with the trial exhibits during deliberations in violation of Petitioner's constitutional rights to be present during critical stages of the trial, to the assistance of counsel, and to confrontation, and where that experiment created new evidence outside the scope of the legitimate trial evidence, prejudicially influencing the jury to convict Mr. Fletcher by shifting the burden of proof to the defense.
>
> II. Petitioner's convictions should be reversed as the evidence, when viewed in a light most favorable to the prosecution, was insufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt.

Respondent argues in an answer to the habeas petition that the evidence against Petitioner was

The trial court dismissed the assault charge and one count of felony firearm during trial, and on June 30, 2000, the jury found Petitioner guilty of second-degree murder and the remaining felony firearm count. The trial court sentenced Petitioner to two years in prison for the felony firearm conviction and to a consecutive term of life imprisonment for the murder conviction.

Petitioner raised his two habeas claims and other issues in an appeal of right, but the Michigan Court of Appeals affirmed his convictions. *See id.* Petitioner then applied for leave to appeal in the Michigan Supreme Court. While his appeal was pending there, he filed a federal habeas corpus petition, alleging that he was being denied his right to a speedy appeal. On October 25, 2004, the Michigan Supreme Court denied leave to appeal. *See People v. Fletcher*, 471 Mich. 900; 688 N.W.2d 83 (2004) (table). Petitioner then moved to withdraw his habeas petition on the ground that it was moot. This Court granted his motion on November 29, 2004. *See Fletcher v. McKee*, No. 04-40239 (E.D. Mich. Nov. 29, 2004).

Petitioner filed the pending Habeas Petition, through counsel, on December 8, 2005. The two grounds for relief read:

> I. Petitioner's convictions should be reversed and a new trial granted where the jury impermissibly conducted an experiment with the trial exhibits during deliberations in violation of Petitioner's constitutional rights to be present during critical stages of the trial, to the assistance of counsel, and to confrontation, and where that experiment created new evidence outside the scope of the legitimate trial evidence, prejudicially influencing the jury to convict Mr. Fletcher by shifting the burden of proof to the defense.
>
> II. Petitioner's convictions should be reversed as the evidence, when viewed in a light most favorable to the prosecution, was insufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt.

Respondent argues in an answer to the habeas petition that the evidence against Petitioner was

overwhelming and that Petitioner may not impeach the jury's verdict by pointing to internal flaws in the jury's deliberative process.

## II. Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result

4

of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original). Furthermore, section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted). In addition, "state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

### III. Discussion

#### A. The Jury's Conduct

Petitioner alleges that the jurors conducted an experiment in violation of his Sixth Amendment rights to confront witnesses, to have an impartial jury, and to have the assistance of counsel. He asserts that the jurors' experiment amounted to an extraneous and prejudicial influence on the jury.

#### 1. The Facts and State Court Decisions

The facts leading to Petitioner's claim have been explained by the state court:

In November 2000, more than four months after the jury rendered its verdict, ABC aired the *20/20 Downtown* broadcast. The episode was entitled "Final Verdict" and featured [Petitioner's] trial. It appears only ten of the twelve jurors who rendered the verdict were interviewed in conjunction with this television production. The broadcast represented that at the early stages of deliberation, eight jurors believed [Petitioner] was guilty. The broadcast reported that while the jurors were skeptical of the prosecution's evidence, most of the jurors were convinced [Petitioner] sounded insincere in his 911 call. The broadcast further reported that additional deliberations persuaded all but one juror that [Petitioner] was guilty.

The hold-out juror, according to the broadcast, became convinced of [Petitioner's] guilt when the jury used the gun that inflicted the fatal wound to conduct several reenactments of the events about which testimony was offered. The television broadcast suggested these reenactments caused at least the hold-out juror and

5

> perhaps other jurors to conclude that the location of the gun at the crime scene did not support the conclusion that Leann shot herself. Therefore, the hold-out juror concluded [Petitioner] must have shot Leann.
>
> Following the broadcast, [Petitioner] moved for a new trial on the ground of juror misconduct during deliberations. [Petitioner] argued that jurors' reenactments amounted to extrinsic evidence of unreliable and improper experiments that strongly influenced the jury to convict him. [Petitioner] argued, in the alternative, that an evidentiary hearing should be conducted to investigate whether there was juror misconduct. The trial court denied the motion for a new trial and for an evidentiary hearing, concluding that the only evidence [Petitioner] presented in support of his claim of juror misconduct was the videotape of the *20/20 Downtown* broadcast, which was inadmissible hearsay evidence. The trial court further found that even if the jury deliberated in the manner depicted in the television broadcast, the jurors' conduct was not improper.

*Fletcher*, 260 Mich. App. at 536-37; 679 N.W.2d at 132-33 (footnotes omitted).

The Michigan Court of Appeals also found no merit in Petitioner's claim. The court of appeals stated that the jurors' experiment was nothing more than a reenactment of events about which the jury heard testimony and that such conduct did not undermine the verdict, even if the reenactment was inconsistent with, or contrary to, the actual evidence presented at trial.

## 2. Clearly Established Federal Law

"A defendant's Sixth Amendment rights are put in jeopardy when facts appear before a jury that were not developed at trial. Such extraneous influence may threaten the guarantee of an impartial jury, and may trammel a defendant's right to confrontation and cross-examination." *Gall v. Parker*, 231 F.3d 265, 334 (6th Cir. 2000) (internal and end citations omitted), *overruled on other grounds by Bowling v. Parker*, 344 F.3d 487, 501 n.3 (6th Cir. 2003). Thus, Petitioner states "a colorable constitutional claim, reviewable under § 2254, when he asserts that the juror[s'] consideration of improper extraneous influences violated his Sixth Amendment right to an impartial jury, as well as his right of confrontation and cross-examination." *Id*.

However, jurors are presumed to be impartial, *see Irvin v. Dowd*, 366 U.S. 717, 723 (1961), and "due process does not require a new trial every time a juror has been placed in a potentially compromising situation . . . . Due process means a jury capable and willing to decide the case solely on the evidence before it . . . ." *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

The "near-universal and firmly-established common-law rule in the United States flatly prohibit[s] the admission of juror testimony to impeach a jury verdict." *Tanner v. United States*, 483 U.S. 107, 117 (1987). An exception to the common-law rule exists "only in situations in which an 'extraneous influence,' [is] alleged to have affected the jury." *Id.* (quoting *Mattox v. United States*, 146 U.S. 140, 149 (1892)). The United States Court of Appeals for the Sixth Circuit "has defined 'an extraneous influence on a juror [as] one derived from specific knowledge about or a relationship with either the parties or their witnesses.' " *Garcia v. Andrews*, 488 F.3d 370, 376 (6th Cir.) (quoting *United States v. Herndon*, 156 F.3d 629, 635 (6th Cir. 1998)), *cert. denied*, __ U.S. __, 128 S. Ct. 493 (2007). One example of an extraneous influence is conducting an out-of-court experiment. *Id.* Internal factors affecting the jury, including the behavior of jurors during deliberations and whether a juror was pressured into arriving at a particular conclusion, may not be used to challenge a final verdict. *Doan v. Brigano*, 237 F.3d 722, 733 (6th Cir. 2001) (citing *Tanner*, 483 U.S. at 117-21), *abrogated on other grounds by Wiggins v. Smith*, 539 U.S. 510 (2003); *Williams v. Bagley*, 380 F.3d 932, 945 n.7 (6th Cir. 2004).

### 3. Application

The jurors who deliberated Petitioner's case re-enacted the crime scene in the jury room. They used a table in the room as a bed, and one of the jurors pretended to be Leann. The juror posing as Leann would fall to the floor during the experiments and the jurors then observed where

the gun landed. Because the gun never fell where they thought it would fall if Leann had accidentally shot herself, they concluded that she did not fire the fatal shot, and Petitioner must have shot her.

The Sixth Circuit has stated that, "[f]or a juror to perform and report to other jurors the results of an out-of-court experiment . . . conflicts with [the petitioner's] constitutional right to a fair and impartial jury that considers only the evidence presented at trial." *Doan*, 237 F.3d at 733. In *Doan*, the defendant was charged with murdering his girlfriend's infant daughter. A juror conducted an experiment in her home to determine whether the defendant had told the truth during trial when he said that he did not see any bruises on the child on the night in question because the rooms in their home were dark. The juror put lipstick on her arm to simulate the victim's bruise and then experimented to see whether the bruise was visible in a dimly lit room. The juror concluded from her experiment that a bruise would be visible in such light. During deliberations, she informed the other jurors of her experiment. The Sixth Circuit concluded that the juror acted as an expert witness to her fellow jurors when she informed the other jurors of her out-of-court experiment. The Sixth Circuit concluded that the juror's conduct injected extraneous and potentially prejudicial evidence into the jury's deliberations in violation of Doan's Sixth Amendment right of confrontation.

Courts have held that the re-enactment of aspects of a crime in the jury room, using admissible evidence, does not constitute an impermissible out-of-court experiment or an extraneous influence on the jury's verdict. For example, in a product liability lawsuit, the Eight Circuit considered whether the jury improperly conducted experiments with an alcohol stove that exploded and injured the plaintiff. *See Banghart v. Origoverken, A.B.,* 49 F.3d 1302, 1305-07 (8th Cir. 1995). The plaintiff's expert had testified that it was possible for a wooden match to be dropped into the

8

stove and to remain lit while the stove was open for refueling. The expert opined that the explosion may have been caused by alcohol fumes igniting as a result of a match which was dropped and continued to burn. The jurors conducted experiments with toothpicks and matches during their deliberations in an effort to duplicate the test performed by the plaintiff's expert. The Eighth Circuit concluded that neither the toothpicks and wooden matches, nor the experiment conducted by the jurors, constituted extraneous evidence. In reaching this conclusion, the Eighth Circuit noted that the jurors relied on evidence admitted at trial (the stove) and they merely evaluated the truth of certain testimony about the design of the stove.

In *Kurina v. Thieret*, 853 F.2d 1409, 1413-14 (7th Cir. 1988), the jurors experimented with a cardboard knife to determine whether the murder victims' wounds could have been inflicted by a left-handed person, such as the defendant. The Seventh Circuit concluded that a simple experiment based solely on evidence introduced at trial was not prejudicial and did not deprive the defendant of his constitutional right of confrontation. The Seventh Circuit stated that the jury was free to evaluate the defense theory based on evidence introduced at trial, including the murder weapon, and that the experiment was not based on information obtained outside of the trial court.

In *Miller v. Harvey*, 566 F.2d 879, 880-81 (4th Cir. 1977), the Fourth Circuit considered an experiment in which a juror bit the arm of another juror to determine whether the resulting bruise was similar to the one that the victim supposedly inflicted on the defendant.[1] The Fourth Circuit did not approve of the jurors' experiment, but it stated that the experiment did not introduce into the

---

[1] The defendant had said that the bruise was caused by the rough edge of a chain link fence.

jurors' deliberations new matter so prejudicial that it denied the defendant due process.

In *Simon v. Kuhlman*, 549 F. Supp. 1202, 1205-08 (S.D.N.Y. 1982), a juror placed a nylon stocking over his head during deliberations to determine whether it was possible to identify facial features through a stocking. The experiment was conducted in front of all the jurors, who concluded that identification can be made through a stocking mask. The District Court noted that, although the experiment was improper, it was not conducted outside the jury room by a single juror who later reported the results of the experiment to the other jurors. The court stated that out-of-court experiments by a single juror are problematic because (1) there is no way for the jury to appraise the conditions of the experiment, (2) such experiments contravene the principles that jurors deliberate as a whole and consider evidence available to all of them, and (3) a juror can intentionally or inadvertently mislead the other jurors about the results of the experiment. The District Court distinguished Simon's case by pointing out that there was no testifying juror and the jurors as a group could evaluate the experiment in light of testimony about the mask and identification. The District Court concluded that the experiment was not so prejudicial that the jury verdict had to be set aside and a new trial granted.

In *Bogle v. Galaza*, 38 F.3d Appx. 437, 438 (9th Cir. 2002) (unpublished), the jury conducted an experiment in which they attempted to insert a key into the lock of a safe. Both items were admitted in evidence. The Ninth Circuit concluded that the jury's conduct did not constitute an impermissible jury experiment or the consideration of extraneous evidence because, in its opinion, jurors are permitted to examine all the evidence and to re-enact a crime using the evidence before it.

Finally, in *United States v. Avery*, 717 F.2d 1020, 1025-26 (6th Cir. 1989), the Sixth Circuit

found no error in the prosecutor's rebuttal argument, which encouraged the jurors to conduct an experiment to determine whether the defendant could have moved explosive materials into a crawl space within three minutes. The Sixth Circuit stated that, even if the jurors recreated the defendant's actions, there was no error in such conduct, because "jurors must be given enough latitude in their deliberations to permit them to use common experiences and illustrations in reaching their verdict." *Id*. at 1026 (citing *United States v. Hephner*, 410 F.2d 930, 936 (7th Cir. 1969), and *Miller*, 566 F.2d at 881).

Petitioner's case is more like *Banghart, Kurina*, *Miller*, *Simon*, *Bogle,* and *Avery* than *Doan.* The jurors in this case conducted their experiment in the jury room with all the deliberating jurors present. The jurors used a gun that was admitted in evidence, and they relied on testimony regarding the likely momentum and location of the gun if Leann had fired it. The experiment was part of the private, internal deliberations of the jury. In fact, in his closing argument, Defense counsel encouraged the jurors to perform another experiment to determine the reliability of testimony regarding a different fact that was in dispute. (Tr. June 26, 2000, at 80.)

Accordingly, the state appellate court's conclusion -- that the jurors did not impermissibly consider extrinsic evidence when they reenacted the crime scene -- did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. *See Avery*, 717 F.2d at 1025-26; *Bogle*, 38 F.3d Appx. at 438; *Banghart*, 49 F.3d at 1305-07; *Kurina*, 853 F.2d at 1413-14; *Miller*, 566 F.2d at 880-81; *Simon*, 549 F. Supp. at 1205-08. Petitioner, therefore, is not entitled to the writ of habeas corpus on the basis of his first claim.

### B. Sufficiency of the Evidence

Petitioner's second and final claim alleges that the evidence adduced at trial was insufficient to support his murder conviction and that the trial court improperly instructed the jury on second-degree murder. The Michigan Court of Appeals adjudicated these claims and concluded that the evidence was sufficient to support the jury's verdict and that the trial court properly instructed the jury on second-degree murder.

### 1. Legal Framework

The Supreme Court has held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship,* the critical question on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphasis in original). The *Jackson* "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id*. at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).

To convict a defendant of second-degree murder in Michigan, the prosecution must prove the following elements: "(1) a death, (2) caused by an act of the defendant, (3) absent circumstances of justification, excuse, or mitigation, (4) done with an intent to kill, an intent to inflict great bodily harm, or an intent to create a very high risk of death with the knowledge that the act probably will cause death or great bodily harm." *People v. Bailey,* 451 Mich. 657, 669; 549 N.W.2d 325, 331

(1996) (quoting *People v. Dykhouse,* 418 Mich. 488, 508-509; 345 N.W.2d 150, 158 (1994)). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v. Allen*, 201 Mich. App. 98, 100; 505 N.W.2d 869, 871 (1993).

### 2. Application

A death obviously occurred, and the forensic pathologist opined that the manner of death was a homicide. There was no evidence justifying, excusing, or mitigating a homicide. Petitioner, however, argues that the evidence was inconclusive as to whether he killed his wife. He also contends that there was no evidence of an intent to kill her.

The Michigan Court of Appeals pointed out that Petitioner,

> was the only person other than Leann who was present at the time of the shooting. Expert testimony established that Leann was shot from a distance of twelve to eighteen inches. Prosecution witnesses established that a woman with Leann's arm length could not point the gun at herself from this distance with her finger on the trigger. Additionally, [Petitioner] stated he had been in the bathroom when Leann was shot. However, high velocity blood mist was found on [Petitioner's] shirt cuff, and the medical examiner testified that no such blood mist was found on Leann's hand. Expert testimony established that [Petitioner] could not have gotten blood mist on himself if, as he claimed, he was in the bathroom when Leann was shot. Thus, there was physical evidence supporting the conclusion that Leann did not shoot herself.

> Furthermore, the jury could have inferred from the evidence that [Petitioner] cleaned himself up before calling 911. The evidence showed [Petitioner] touched Leann's body during the 911 call after asking if he should turn over Leann's body. [Petitioner] continued to talk to the dispatcher and had a small amount of blood on his hands when the police arrived. [B]lood was found in the bathroom sink, indicating that [Petitioner] had washed his hands and that he had had a "fair quantity" of blood on his hands when he washed them. There was also a washcloth in the bathroom that was wet when the police arrived. From this evidence, the jury could infer that [Petitioner] killed Leann and attempted to wash away evidence of the murder before placing the 911 call.

> Additionally, there was evidence [Petitioner] had a motive to murder Leann. Leann

13

> was shot and killed days after she learned she was pregnant. Leann's pregnancy jeopardized [Petitioner's] relationship with Chrzanowski, who had told [Petitioner] she would not continue to see him if he was sexually active with Leann. Even if Chrzanowski would have continued her relationship with [Petitioner] despite Leann's pregnancy, a second child would have complicated [Petitioner's] departure from the marriage. This motive evidence bolstered the prosecution's case that the shooting was not an accident.

*Fletcher*, 260 Mich. App. at 562-63; 679 N.W.2d at 146.

There was additional evidence to support the murder conviction. Petitioner admitted to the police that he loaded one clip into the gun when he and Leann returned home from the firing range and that he racked the gun, *i.e.*, placed a bullet in the chamber. The gun itself was "like new," and a defense witness opined that there was no reason to think that the gun would not function normally if it were loaded with ammunition, cocked, and a little more than twelve pounds of pressure were applied to the trigger. There was no evidence that the gun would discharge accidentally.

Leann had no gun powder residue (soot) on her hands or arms despite the fact that the murder weapon deposited significant amounts of residue on a shooter during testing. She also had no high velocity blood mist, or backspatter, on her hand, even though there was backspatter on the gun and, according to the pathologist, backspatter would have been present on her hand if she had shot herself.

Furthermore, there was blood under Leann's arm as she laid on the floor and blood under the gun and clip on the floor. A prosecution witness testified that, because Leann's brain stem was severed by the gunshot, her blood likely did not exit her body in a pumping motion. As a result, Leann's body and the gun would have reached the floor before the blood did. This evidence, coupled with the fact that the body obviously had been moved, suggested that the crime scene was staged. Although Petitioner claims that he moved the body with the approval of the 911 operator,

he informed the responding police officer that he did not know whether he moved the body before or after he called 911. He also could not tell the officer where he had touched Leann or how far he had moved her, and he denied having any recent marital problems.

Both a police officer and Leann's mother suspected that Petitioner had shot Leann. The officer's suspicions were aroused by the fact that Petitioner probably knew what evidence the police would look for, and he had no blood on him even though one would expect someone to cradle a dying relative.

Leann's mother suspected Petitioner killed Leann because Leann feared guns, was not depressed, and would never put a gun near her head or body. In addition, Petitioner had never before asked Leann to go to the firing range, nor asked Leann's parents to watch their child. Petitioner also seemed to be trying too hard to give the impression of being a loving husband when he resumed living with Leann. Leann's mother thought that the loving-husband routine was part of Petitioner's plan to kill Leann.

Although there were conflicting theories about the technical evidence, a reviewing court must view the evidence in a light most favorable to the prosecution, *Jackson*, 443 U.S. at 319, and must

> not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Ibid.*

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003). Moreover, the prosecution was not required to "remove every reasonable hypothesis except that of guilt." *United States v. Stone*, 748

F.2d 361, 363 (6th Cir. 1984).

Accordingly, considering all the available evidence, in light of the elements necessary to prove second-degree murder, *see Bailey,* 451 Mich. at 669, the Court is convinced that a rational trier of fact could have concluded that Petitioner shot his wife, without justification, and that he intended to kill her. As a result, the state court's decision on this issue was not contrary to, or an unreasonable application of, *Jackson*. *Jackson*, 443 U.S. at 318-19.

### 3. Instructing the Jury on Second-Degree Murder

Petitioner's sufficiency of the evidence claim also argues that the trial court erred by instructing the jury on the lesser-included offense of second-degree murder. Petitioner claims that he lacked notice of the second-degree murder charge.

This claim lacks merit because, at the time of Petitioner's trial, state courts were required to instruct on second-degree murder in every case in which the defendant was charged with first-degree murder. *See People v. Jenkins*, 395 Mich. 440, 442; 236 N.W.2d 503, 504 (1975), *overruled by People v. Cornell*, 466 Mich. 335, 358; 646 N.W.2d 127 (2002). Although the *Jenkins* rule was overruled while Petitioner's case was pending on direct review, defense counsel specifically asked the trial court to inform the jurors that the court was "mandated by law" to instruct them on second-degree murder as a lesser-included offense of first-degree murder. (Tr. June 26, 2000, at 123-24). This demonstrates that Petitioner was unequivocally aware and had notice that the jury could consider a charge of second-degree murder. Consequently, the instruction was not fundamentally unfair or a violation of Petitioner's due process rights.

### IV. Conclusion

For all the reasons stated above, the state court's rejection of Petitioner's claims did not

result in a decision that was an unreasonable determination of the facts. The state court's decision also did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

Accordingly, **IT IS HEREBY ORDERED AND ADJUDGED** that the Petition for a Writ of Habeas Corpus [docket entry #1] is **DENIED**.

**SO ORDERED.**

Dated: January 17, 2008
s/Paul V. Gadola
HONORABLE PAUL V. GADOLA
UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on January 17, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Brad H. Beaver; Brian M. Legghio, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: .

s/Ruth A. Brissaud
Ruth A. Brissaud, Case Manager
(810) 341-7845

---